IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>EDDIE RAY KAHN, a/k/a EDDIE RAY, a/k/a )<br>EDDIE RAY: HOUSE OF KAHN; )<br>MILTON HARGRAVES BAXLEY, II; )<br>BRYAN MALATESTA; )<br>KATHLEEN KAHN, a/k/a KOOKIE KAHN; )<br>DAVID STEPHEN LOKIETZ, a/k/a DAVID- )<br>STEPHEN: HOUSE OF LOKIETZ; )<br>AMERICAN RIGHTS LITIGATORS, a )<br>purported trust; GUIDING LIGHT OF GOD )<br>MINISTRIES, a purported corporation sole; and )<br>EDDIE KAHN AND ASSOCIATES, a )<br>purported limited liability corporation, )<br><br>Defendants. ) | Civil No. 5:03-cv-436-Oc-10GRJ |

## COMPLAINT FOR PERMANENT INJUNCTION

Plaintiff, the United States of America, complains as follows against defendants Eddie

Ray Kahn, also known as Eddie Ray and Eddie Ray: House of Kahn; Milton Hargraves Baxley,

II; Bryan Malatesta; Kathleen Kahn, also known as Kookie Kahn; David Stephen Lokietz, also

known as David-Stephen: House of Lokietz; American Rights Litigators (ARL), a purported

trust; Guiding Light of God Ministries (GLGM), a purported corporation sole; and Eddie Kahn

and Associates, a purported limited liability corporation:

1. This action has been requested by the Chief Counsel of the Internal Revenue Service, a

delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the

Attorney General, pursuant to Internal Revenue Code (I.R.C.) (26 U.S.C.) §§ 7402(a) and 7408.

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and I.R.C. §§ 7402(a) and 7408.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1396 because defendants operate their abusive tax scheme promotions from an office located at 440 North Donnelly Street, Mount Dora, Florida, and because three of the five individual defendants reside within this judicial district.

## Defendants

4. Defendant Eddie Ray Kahn, a/k/a Eddie Ray, a/k/a Eddie Ray: House of Kahn, hereinafter Kahn, resides at 32504 Wekiva Pines Boulevard, Sorrento, Florida. He conducts business through the following entities, which he founded and controls: defendants ARL, GLGM, and Eddie Kahn and Associates. He is married to defendant Kathleen Kahn.

5. Defendant Milton Hargraves Baxley, II resides at 1929 NW 12th Terrace, Gainesville, Florida, and conducts business through defendants ARL and GLGM. He is an attorney licensed in Florida.

6. Defendant Bryan Malatesta resides at 2721 North Hill Terrace, Cleburne, Texas, and conducts business through defendants ARL and GLGM. He is a certified public accountant (CPA).

7. Defendant Kathleen Kahn, a/k/a Kookie Kahn, hereinafter Kookie Kahn, who is married to defendant Eddie Kahn, resides at 32504 Wekiva Pines Boulevard, Sorrento, Florida. She conducts business through defendants ARL, Eddie Kahn and Associates, and GLGM.

8. Defendant David Stephen Lokietz, a/k/a David-Stephen: House of Lokietz, resides at 176 North Lake Franklin Drive, Mount Dora, Florida, and conducts business through defendants ARL and GLGM.

9. Defendant American Rights Litigators (ARL) is a purported trust, doing business at 440 North Donnelly Street, Mount Dora, Florida. It was founded and is controlled by Kahn.

10. Defendant Guiding Light of God Ministries (GLGM) is a purported corporation sole, incorporated under the laws of Washington and Nevada, and doing business at 440 North Donnelly Street, Mount Dora, Florida. It was founded and is controlled by Kahn.

11. Defendant Eddie Kahn and Associates is a purported limited liability corporation doing business at 440 North Donnelly Street, Mount Dora, Florida. It was founded and is controlled by Kahn.

### Defendants' Activities

12. Defendants organize and sell abusive tax schemes that falsely purport to exempt their customers from federal taxation.

#### A. Entities

13. Defendants promote and sell abusive tax schemes through three businesses: ARL, Eddie Kahn and Associates, and GLGM.

14. ARL has been in business since 1996 and was, until replaced by GLGM in 2003, defendants' main vehicle for selling their abusive tax schemes.

15. Through Eddie Kahn and Associates, Kahn and Kookie Kahn sell Kahn's manuals and videotapes dispensing fraudulent tax advice and instructing customers to obstruct IRS examinations and collections.

16. In August 2003, Kahn announced that he was replacing ARL and Eddie Kahn and Associates with GLGM, which he describes as a tax-exempt "religious office." GLGM is ARL's successor; the two businesses are indistinguishable, providing the same abusive tax schemes for the same prices and using the same staff. Throughout this complaint, they are referred to as ARL/GLGM.

**B. Defendants' Abusive Tax Schemes**

17. For an annual fee of $150 for a single person, $200 for a married couple, and $200 for a trust, corporation, partnership, or similar business entity, customers become ARL/GLGM members and complete IRS Forms 2848, Power of Attorney and Declaration of Representative ("POA forms"), authorizing either Baxley, Malatesta, or both to represent them before the IRS.

18. As of May 2002, the IRS had received a total of 1,932 POA forms authorizing either Baxley, Malatesta, or both to represent customers before the IRS. Of this total number, 1,557 of the POA forms list Baxley as the authorized representative, and 1,428 list Malatesta as the authorized representative.

19. ARL/GLGM has used other attorneys and CPAs in the past to represent customers, including Ray Pope and Thomas W. Roberts.

20. ARL/GLGM charges fees ranging from $25 to $1,400 for each abusive tax scheme provided.

21. ARL/GLGM produces counterfeit checks, called "registered bills of exchange," for customers to send to the IRS purporting to satisfy the customer's outstanding tax liabilities. These counterfeit checks appear genuine, having watermarks and other security features of authentic checks. They are designed to deceive the IRS into crediting the customer's account and

releasing federal tax liens. ARL/GLGM charges between $25 and $150 for each counterfeit check. The United States has received ARL/GLGM counterfeit checks totaling $2,237,485.55.

22. ARL/GLGM produces counterfeit bonds, called "registered bonds," for customers to send to the IRS purporting to satisfy the customer's outstanding tax liabilities. These counterfeit bonds are designed to deceive the IRS into crediting the customer's account and releasing federal tax liens.

23. ARL/GLGM prepares a package for customers to send to the IRS that includes a letter, a partially completed POA form, a blank federal tax return, and a counterfeit bond with the amount left blank. The letter requests that the IRS complete the blank POA form, making the IRS the customer's representative, then complete the federal tax return for the customer, determine the tax due, and write that amount on the counterfeit bond. The letter claims that the counterfeit bond will satisfy the customer's tax liability.

24. ARL/GLGM sells a scam called "UCC paperwork," based on a frivolous interpretation of the Uniform Commercial Code (UCC), to its customers for between $300 and $500. ARL/GLGM directs purchasers of this scam to complete a UCC-1 Financing Statement, a Security Agreement, and a letter to the United States Treasury, claiming in each document a security interest against themselves, their own name, their own birth certificate, and their own property. ARL/GLGM falsely advises customers that this procedure prevents creditors, including the IRS, from collecting against them.

25. For either $1,300 or $1,400, ARL/GLGM creates corporations sole for customers, falsely declaring that the customer is a tax-exempt religious organization. ARL/GLGM advises customers to transfer their income and assets to a corporation sole, where ARL/GLGM falsely

claims that the assets will be protected from collection by creditors, including the IRS, and that the income will be tax-exempt.

26. ARL/GLGM tells customers that the IRS misclassifies Americans as being engaged in taxable activities, but that ARL/GLGM can "decode" and "correct" its customers' IRS Individual Master File (IMF) or Business Master File (BMF) for fees starting at $200. ARL/GLGM claims that its "correction" to the customer's IMF or BMF will establish in IRS records that the customer is not subject to federal taxation.

27. ARL/GLGM assists customers in filing frivolous law suits in state court seeking to release federal tax liens.

28. For $50 per letter, ARL/GLGM sells letters for customers to send directly to the IRS, making frivolous arguments about the internal revenue laws and refusing to cooperate with the IRS.

29. For $50 per letter, ARL/GLGM sells letters from Baxley and Malatesta to the IRS making frivolous arguments about the internal revenue laws and refusing their customer's cooperation with the IRS.

30. For $50 per letter, ARL/GLGM sells letters from Baxley and Malatesta to the IRS threatening to file complaints with the Treasury Inspector General for Tax Administration (TIGTA) against individual IRS employees and falsely claiming that the IRS employees are violating the law by attempting to assess or collect taxes from ARL/GLGM customers.

31. ARL/GLGM sells complaints from Baxley and Malatesta to TIGTA falsely accusing IRS employees of misconduct and requesting that they be investigated. ARL/GLGM charges $50 for each complaint.

32.  One TIGTA special agent assigned to investigate most ARL/GLGM-filed complaints estimates that he has spent nearly 1,500 hours investigating them.

33.  ARL/GLGM charges $35 for Baxley and Malatesta to send frivolous Freedom of Information Act (FOIA) and Privacy Act requests to the IRS demanding nonexistent documents, such as "verified" statements from the Secretary of the Treasury that the IRS has complied with the law with regard to a particular taxpayer.

34.  ARL/GLGM sells letters from Baxley and Malatesta to third parties demanding that they refuse to comply with IRS administrative summonses for information relating to ARL/GLGM customers.

35.  ARL/GLGM charges customers $100 for Malatesta to represent the customer via telephone at a IRS Collection Due Process hearing.  Malatesta makes frivolous arguments and refuses his customers' cooperation at these hearings.

36.  ARL/GLGM charges customers for Baxley to represent them at meetings with the IRS.  Baxley makes frivolous arguments and refuses his customers' cooperation at these meetings.

### C. Individual Defendants' Activities

#### Kahn's Activities

37.  Kahn operates and controls ARL, GLGM, and Eddie Kahn and Associates.

38.  Kahn directs the activities of Baxley, Malatesta, Lokietz, and Kookie Kahn with regard to defendants' abusive tax schemes.

39.  Kahn, with Kookie Kahn's assistance, promotes defendants' abusive tax schemes.

**Lokietz's Activities**

40.  Kahn held the title of executive trustee of ARL until April 18, 2003, when he transferred the title to Lokietz.

41.  As executive trustee for ARL, in 2003 Lokietz opened bank accounts and filed a lawsuit in this district, *David-Stephen: House of Lokietz v. United States of America, c/o Internal Revenue Service*, Case No. 5:03-cv-153-Oc-10GRJ (M.D. Fla.), on ARL's behalf.

42.  On March 25, 2003, Lokietz transferred ARL's assets to GLGM.

43.  While Lokietz is now the nominal head of ARL, Kahn continues to control ARL.

**Kookie Kahn's Activities**

44.  Kookie Kahn schedules Kahn's seminar appearances and assists in his seminar presentations.

45.  Kookie Kahn sells Kahn's manuals and videotapes dispensing fraudulent tax advice and instructing customers to obstruct IRS examinations and collections.

46.  Kookie Kahn was a signatory on some of ARL's bank accounts

47.  Kookie Kahn was secretary of ARL.

**Baxley and Malatesta's Activities**

48.  Baxley and Malatesta work for ARL/GLGM representing customers before the IRS.

49.  Baxley and Malatesta draft letters to the IRS making frivolous arguments about the internal revenue laws and refusing their customers' cooperation with the IRS.

50.  Baxley and Malatesta draft letters to the IRS threatening to file complaints with TIGTA against individual IRS employees and falsely claiming that the IRS employees are violating the law by attempting to assess or collect taxes from ARL/GLGM customers.

51.  Baxley and Malatesta draft complaints to TIGTA falsely accusing IRS employees of misconduct and requesting that they be investigated.

52.  Baxley and Malatesta draft frivolous FOIA and Privacy Act requests to the IRS demanding nonexistent documents, such as "verified" statements from the Secretary of the Treasury that the IRS has complied with the law with regard to a particular taxpayer

53.  Baxley and Malatesta interfere with IRS administrative summonses by writing the summoned party demanding that it refuse to comply with the summons.

54.  Baxley and Malatesta write letters for customers to sign and send directly to the IRS, refusing to cooperate and making frivolous arguments.

55.  Upon information and belief, Baxley and Malatesta do not actually write each of these letters, TIGTA complaints, and FOIA and Privacy Act requests, but give ARL/GLGM permission to use their letters in return for a portion of the $50 per letter fee.  All of these letters are sent from ARL/GLGM's office in Mt. Dora, Florida.

56.  Malatesta represents customers via telephone at IRS Collection Due Process hearings.  He makes frivolous arguments and refuses his customers cooperation at these hearings.

57.  Baxley represents customers at meetings with the IRS.  He makes frivolous arguments and refuses his customer's cooperation at these meetings.

**D.  Defendants' Marketing of Their Abusive Tax Schemes**

58.  Defendants promote their abusive tax schemes through the websites www.eddiekahn.com, www.taxtruthnews.com, www.eddiekahnoverseer.org, and www.glgm.org.

59.  Defendants promote their abusive tax schemes through a newsletter, "Tax Truth Newsletter:  Exposing the Deceptive Tax Practices of the IRS," sold through the website

www.taxtruthnews.com. Defendants charge $69.95 for an annual subscription to the newsletter, and $21.95 for a trial subscription of six issues. Old issues are available for free on www.taxtruthnews.com.

60. Kahn and Kookie Kahn promote defendants' abusive tax schemes through seminars, advertised on www.eddiekahn.com and www.eddiekahnoverseer.org, that they give across the country. In 2003, Kahn has given seminars in Newport News, Virginia; Dania Beach, Florida; New Cumberland, Pennsylvania; Portland, Oregon; and Denver, Colorado.

61. ARL/GLGM has customers nationwide, including in Ocala, Florida; Southfield, Michigan; Marietta, Georgia; Laguna Beach, California; Attleboro, Massachusetts; Somers, Connecticut; Middletown, New York; Mechanicsburg, Pennsylvania; and Lacey, Washington.

62. Through Eddie Kahn and Associates, Kahn and Kookie Kahn sell a manual, "No Enforcement Statutes/IRS Regulations Applicable for Individual Income Tax," and videotapes updating the manual. The manual and videotapes instruct customers to obstruct IRS examinations and collections.

63. In 2002, Kahn testified in a bankruptcy proceeding that ARL/GLGM has had approximately 4,000 customers since 1996.

64. In promoting their abusive tax schemes, defendants make numerous false, misleading, or fraudulent statements, including:

- ARL/GLGM's counterfeit checks are "definitely are valid forms of payment."
- The Government maintains a "Treasury Direct Account" for each American.

- By using a corporation sole, customers' income becomes tax-exempt and their assets become collection-proof.

- A corporation sole is "Something the IRS Cannot Touch."

- What the IRS does "to collect money is usually not correct. They don't want the public to understand that much less [sic] understand how to expose their deceptive tax practices. Therefore, they would rather let a person go than to let such information become public knowledge even if the amount the person supposedly owes is one million dollars."

- The IRS cannot answer the question "What Specific Tax Form Am I Required by Law to File?"

- "There is no law that requires anyone to file a 1040 form."

- Sending ARL/GLGM's blank POA package to the IRS "eliminat[es] willful failure to file a tax return and tax evasion [charges]."

- "[N]o American is liable for Individual Income Tax."

- Kahn's "registered bills of exchange" and "registered bonds" can be used to satisfy tax liabilities.

- "Anyone can create their own corporation sole and take advantage of all its inherent benefits."

- "[A] corporation sole has no filing requirements with the Internal Revenue. It has no requirement to file taxes. So the money is flowing through [the corporation sole] just on a tax-free basis, it works like a ministry."

65. Defendants employ these and other false and fraudulent statements in advising

customers to:

- Send counterfeit checks, called "registered bills of exchange," and counterfeit bonds, called "registered bonds," to the IRS as payment for tax liabilities;

- Send the IRS blank POA forms, blank federal tax returns, and counterfeit bonds with the amount left blank, requesting that the IRS serve as the customer's POA, complete the federal tax return, write the amount of tax owed on the counterfeit bond, and use it to satisfy the customer's liability;

- Send complaints to TIGTA falsely claiming that individual IRS employees are violating the law;

- Send frivolous FOIA and Privacy Act requests to the IRS;

- 11 -

- Obstruct IRS examination and collection efforts by refusing to cooperate and by making frivolous arguments;

- Send letters to the IRS asserting frivolous arguments regarding the internal revenue laws and refusing to cooperate with the IRS;

- Send documents to the IRS asking for changes to the customer's IMF or BMF;

- Fail to file federal tax returns;

- Fail to pay federal taxes;

- File UCC-1 Financing Statements asserting a security interest in the customer's own name and property;

- Form corporations sole under the pretext that the customer is a church or ministry;

- Hide assets and income in corporations sole; and

- File frivolous lawsuits seeking to release federal tax liens.

## Count I:
## Injunction under I.R.C. § 7408 for Violation of I.R.C. § 6700

66. The United States incorporates by reference the allegations in paragraphs 1 through 65.

67. I.R.C. § 7408 authorizes a court to enjoin persons who have engaged in any conduct subject to penalty under I.R.C. § 6700 if the court finds that injunctive relief is appropriate to prevent the recurrence of such conduct.

68. I.R.C. § 6700 penalizes any person who organizes or sells a plan or arrangement and, in connection with the organization or sale, makes a statement regarding any tax benefit which the person knows or has reason to know is false or fraudulent as to any material matter.

69. Defendants organize and sell abusive tax schemes that they falsely claim will enable customers to avoid the assessment and collection of federal taxes.

70. In organizing and selling their abusive tax schemes, defendants make false or fraudulent statements regarding the excludibility of income and other tax benefits.

71. Defendants know or have reason to know that their abusive tax schemes and the materials promoting them contain false or fraudulent statements within the meaning of I.R.C. § 6700.

72. If they are not enjoined, defendants are likely to continue to organize and sell their abusive tax schemes.

### Count II:
### Injunction under I.R.C. § 7408 for Violation of I.R.C. § 6701

73. The United States incorporates by reference the allegations in paragraphs 1 through 72.

74. I.R.C. § 7408 authorizes a court to enjoin persons who have engaged in any conduct subject to penalty under I.R.C. §§ 6700 or 6701 if the court finds that injunctive relief is appropriate to prevent the recurrence of such conduct.

75. I.R.C. § 6701 penalizes any person who prepares or assists in preparing a return, affidavit, or other document that the person knows or has reason to believe will be used in connection with any material matter arising under the internal revenue laws, and that the person knows would, if so used, result in an understatement of tax liability for another person.

76. Defendants prepare or assist in preparing letters, counterfeit negotiable instruments, and other documents that they know or have reason to believe will be used in connection with

material matters arising under the internal revenue laws, including the assessment and collection

of federal taxes.

77.  Defendants know that these documents will result in understating their customers'

tax liability.

78.  If they are not enjoined, defendants are likely to continue to prepare and assist in

preparing documents to be used in connection with material matters arising under the internal

revenue laws.

**Count III:**
**Injunction under I.R.C. § 7402(a) for Unlawful Interference**
**with Enforcement of the Internal Revenue Laws**
**and Appropriateness of Injunctive Relief**

79.  The United States incorporates by reference the allegations in paragraphs 1 through

78.

80.  I.R.C. § 7402(a) authorizes a court to issue orders of injunction as may be necessary

or appropriate for the enforcement of the internal revenue laws.

81.  I.R.C. § 7402(a) expressly provides that the injunction remedy is "in addition to and

not exclusive of" other remedies for enforcing the internal revenue laws.

82.  Defendants, through the actions described above, have engaged in conduct that

interferes substantially with the enforcement of the internal revenue laws.

83.  Defendants' conduct results in irreparable harm to the United States.

84.  Defendants are causing and will continue to cause substantial revenue losses to the

United States Treasury, much of which may be unrecoverable.

85.  Defendants are causing the IRS and the Department of the Treasury to waste time responding to and processing their counterfeit checks, counterfeit bonds, frivolous letters, and frivolous TIGTA complaints.

86.  Defendants are obstructing the assessment and collection of tax through their counterfeit checks, counterfeit bonds, frivolous letters, frivolous TIGTA complaints, corporations sole, and other abusive tax schemes.

87.  If defendants are not enjoined, they are likely to continue to engage in conduct subject to penalty under I.R.C. §§ 6700 and 6701 that interferes with the enforcement of the internal revenue laws.

88.  While the United States will suffer irreparable injury if defendants are not enjoined, defendants will not be harmed by being compelled to obey the law.

89.  The public interest would be advanced by enjoining defendants because an injunction will stop their illegal conduct and the harm that conduct is causing to the United States Treasury.

WHEREFORE, plaintiff, the United States of America, respectfully prays for the following:

A.  That the Court find that defendants have engaged in conduct subject to penalty under I.R.C. §§ 6700 and 6701, and that injunctive relief under I.R.C. § 7408 is appropriate to prevent a recurrence of that conduct;

B.  That the Court find that defendants are interfering with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to I.R.C. § 7402(a) and the Court's inherent equity powers;

C. That this Court, pursuant to I.R.C. § 7408, enter a permanent injunction prohibiting defendants, individually and doing business under the various names listed in this complaint or under any other name or using any other entity, and their representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from directly or indirectly:

1.   Engaging in activity subject to penalty under I.R.C. § 6700, including organizing or selling a plan or arrangement and making a statement regarding the excludibility of income that they know or have reason to know is false or fraudulent as to any material matter;

2.   Engaging in activity subject to penalty under I.R.C. § 6701, including preparing and/or assisting in the preparation of a document related to a matter material to the internal revenue laws that includes a position that they know will result in an understatement of tax liability;

3.   Promoting, marketing, organizing, selling, or receiving payment for any plan or arrangement regarding the excludibility of income that they know or have reason to know is false or fraudulent as to any material matter; and

4.   Engaging in any other activity subject to penalty under I.R.C. §§ 6700 or 6701;

D. That this Court, pursuant to I.R.C. § 7402(a), enter a permanent injunction prohibiting defendants, individually and doing business under the various names listed in this complaint or under any other name or using any other entity, and their representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from directly or indirectly:

1.   Preparing or assisting in the preparation of correspondence to the IRS on behalf of any other person;

2.   Preparing or assisting in the preparation of UCC forms and related documents purporting to give the customer a security interest in his or herself, own name, own birth certificate, or own property;

3.    Selling or organizing any business arrangement, including corporations sole, that encourages noncompliance with the income tax laws, misrepresents the tax savings realized by using the arrangement, or conceals the receipt of income;

4.    Preparing or assisting in the preparation of complaints to TIGTA;

5.    Preparing or assisting in the preparation of FOIA and Privacy Act requests on behalf of any other person;

6.    Representing any other person before the IRS;

7.    Preparing or assisting in the preparation of documents purporting to "decode" IRS files;

8.    Instructing or advising anyone to obstruct IRS examinations, collections, or other proceedings;

9.    Falsely advising anyone that they are not required to file federal tax returns or pay federal taxes; and

10.   Engaging in other similar conduct that substantially interferes with the administration and enforcement of the internal revenue laws;

E.  That this Court, pursuant to I.R.C. §§ 7402(a), require defendants to contact by mail all individuals who have purchased their abusive tax shelters, plans, arrangements, programs, manuals, videotapes, or newsletters, inform those individuals of the Court's findings concerning the falsity of defendants' prior representations, and attach a copy of the permanent injunction against defendants and their organizations, and require each defendant to certify to the Court within eleven days of the permanent injunction that he or she has complied with this provision;

F.  That this Court, pursuant to I.R.C. §§ 7402(a), enjoin defendants from distributing any newsletter containing abusive tax scheme promotional materials, materials designed to incite others imminently to violate the law, or false information regarding the internal revenue laws;

G.  That this Court, pursuant to I.R.C. §§ 7402(a) enter an injunction requiring defendants to produce to the United States any records in their possession or to which they have access identifying by name, Social Security number, and address the members of ARL/GLGM and the persons who have purchased defendants' abusive tax shelters, plans, arrangements, or programs, and require each defendant to certify to the Court within eleven days of the permanent injunction that he or she has complied with this provision;

H.  That this Court, pursuant to I.R.C. § 7402(a) and the Court's inherent equitable powers, enter an injunction requiring defendants within fifteen days of the permanent injunction to disgorge to their customers all ARL/GLGM membership fees and all payments for their abusive tax schemes and services  received since ARL was formed in 1996; requiring each defendant to certify to the Court within twenty days of the permanent injunction that he or she has complied with this provision; and enjoining defendants from receiving any additional payments for abusive tax schemes;

I.  That this Court, pursuant to I.R.C. §§ 7402(a) enter an injunction requiring defendants and their representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, to remove from their websites all abusive tax scheme promotional materials and materials designed to incite others imminently to violate the law; to display prominently on the first page of those websites a complete copy of the Court's permanent injunction; to each certify to the Court within eleven days of the permanent injunction that he or she has complied with this provision; and to maintain their websites for one year with a complete copy of the Court's permanent injunction so displayed throughout that time;

J.  That this Court permit the United States to conduct post-judgment discovery to ensure defendants' compliance with the permanent injunction; and

K.  That this Court grant the United States such other relief, including costs, as is just and equitable.

Respectfully submitted,

PAUL I. PEREZ
United States Attorney


ANNE NORRIS GRAHAM
EVAN J. DAVIS
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Tel.:  (202) 353-4384
            514-0079
Fax:  (202) 514-6770