IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 5:03-CV-436-OC-10GRJ |
| | ) | |
| EDDIE RAY KAHN, a/k/a EDDIE RAY, a/k/a | ) | |
| EDDIE RAY: HOUSE OF KAHN; | ) | |
| MILTON HARGRAVES BAXLEY, II; | ) | |
| BRYAN MALATESTA; | ) | |
| KATHLEEN KAHN, a/k/a KOOKIE KAHN; | ) | |
| DAVID STEPHEN LOKIETZ, a/k/a DAVID- | ) | |
| STEPHEN: HOUSE OF LOKIETZ; | ) | |
| AMERICAN RIGHTS LITIGATORS, a | ) | |
| purported trust; GUIDING LIGHT OF GOD | ) | |
| MINISTRIES, a purported corporation sole; and | ) | |
| EDDIE KAHN AND ASSOCIATES, a | ) | |
| purported limited liability corporation, | ) | |
| | ) | |
| Defendants. | ) | |

---

# UNITED STATES' BRIEF IN SUPPORT OF
# MOTION FOR TEMPORARY RESTRAINING ORDER AND
# PRELIMINARY INJUNCTION

---

PAUL I. PEREZ
United States Attorney

ANNE NORRIS GRAHAM
EVAN J. DAVIS
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 353-4384
514-0079

# TABLE OF CONTENTS

I.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.  ARL/GLGM Sells Counterfeit Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.  ARL/GLGM Assists Customers in Hiding Assets and Income from the IRS in Corporations Sole . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.  ARL/GLGM Sends Frivolous Letters and TIGTA Complaints To Obstruct IRS Examinations and Collections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.  Kahn Markets ARL/GLGM's Abusive Tax Schemes Nationwide . . . . . . . . . . . . . 11

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A.  Standards for Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B.  Injunctive Relief Is Warranted under I.R.C. § 7408 Because Defendants' Promotions and Their Preparation of Frivolous Tax-Related Documents Violate Both I.R.C. §§ 6700 and 6701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.  Defendants Should Be Enjoined Under I.R.C. § 7402(a) . . . . . . . . . . . . . . . . . . . . 18

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407 (11th Cir. 1998) ............................................................................ 14, 18

Asseo v. Pan America Grain Co., 805 F.2d 23 (1st Cir. 1986) ...................... 14

Biermann v. Commissioner, 769 F.2d 707 (11th Cir. 1985) .......................... 16

Brody v. United States, 243 F.2d 378 (1st Cir. 1957) .................................... 18

Dunlop v. Davis, 524 F.2d 1278 (5th Cir. 1975) ........................................... 19

Estate Pres. Services, 38 F. Supp. 2d 846 (E.D. Cal. 1998), aff'd, 202 F.3d 1093 (9th Cir. 2000) .............................................. 16

Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411 (4th Cir. 1999) ................................................................................... 13

S.E.C. v. Holschuh, 694 F.2d 130 (7th Cir. 1982) ........................................ 14

United States v. Basye, 410 U.S. 441 (1973) ................................................ 16

United States v. Ekblad, 732 F.2d 562 (7th Cir. 1984) ................................. 18

United States v. Ernst & Whinney, 735 F.2d 1296 (11th Cir. 1984) ....... 14, 18

United States v. Estate Pres. Services, 202 F.3d 1093 (9th Cir. 2000) .... 14, 15

United States v. First National City Bank, 568 F.2d 853 (2d Cir. 1977) . ..... 18

United States v. Kaun, 633 F.Supp. 406 (E.D. Wis. 1986), aff'd, 827 F.2d 1144 (7th Cir. 1987) .................................................... 18

United States v. Lee, 455 U.S. 252 (1982) .............................................. 18, 19

United States v. Raymond, 228 F.3d 804 (7th Cir. 2000) ........................ 15, 16

University of Tex. v. Camenisch, 451 U.S. 390 (1981) ................................. 14

Walker v. O'Bannon, 487 F.Supp. 1151 (W.D. Pa. 1980), citing Dilworth v. Riner, 343 F.2d 226 (5th Cir. 1965) ........................... 13

## DOCKETED CASES

<u>Nutt v. United States</u>, No. 1:96-CV-96-MMP, 1996 WL 741592
    (N.D. Fla., Oct. 7, 1996) ........................................................................ 17

<u>United States v. Sweet</u>, No. 8:01-CV-331-T-23TGW, 2001 WL 1346666
    (M.D. Fla. Sept. 17, 2001) ................................................................... 17

## FEDERAL STATUTES

26 U.S.C. § 6325(a)(1) ........................................................................... 5

26 U.S.C. § 6325(f)(2) ............................................................................ 6

26 U.S.C. § 6700 ............................................................................. 15, 19

26 U.S.C. § 6701 ............................................................................. 15, 19

26 U.S.C. § 7402(a) ............................................................................. 18

26 U.S.C. § 7408 ......................................................................... 13, 14, 15

## STATE STATUTES

Nev. Rev. Stat. § 84.010 ........................................................................ 6

Utah Code Ann. § 16-7-1 ........................................................................ 6

Wash. Rev. Code § 24.12.010 .................................................................. 6

With the assistance of Milton Hargraves Baxley, II; Bryan Malatesta; Kathleen "Kookie" Kahn; and David Stephen Lokietz;[1] Eddie Ray Kahn sells fraudulent tax schemes through his businesses American Rights Litigators (ARL), Guiding Light of God Ministries (GLGM), and Eddie Kahn and Associates.  Kahn describes ARL/GLGM[2] as "a professional organization that utilizes aggressive CPAs [certified public accountants] and attorneys dedicated to legally representing and protecting the rights of American citizens"[3]—the "aggressive" CPA being Malatesta, and the "aggressive" attorney Baxley.[4]  In reality, ARL/GLGM is the vehicle by which Kahn peddles a plethora of schemes designed to help customers evade federal taxes and obstruct IRS examinations and collections.  He sells counterfeit checks to pay taxes, "corporations sole" in which to hide assets, harassing letters to the IRS, and other scams.  Luring customers with Baxley and Malatesta's supposed expertise, defendants are bilking customers of millions of dollars[5] and causing an incalculable drain on the United States Treasury.  The United States asks that the Court temporarily restrain defendants from promoting their fraudulent tax schemes and

---

[1] When Kahn formed GLGM in 2003, Lokietz became the nominal head of ARL.  *See* **Tab 1**, Compl. for Wrongful Levy by IRS; *see also* **Tab 2**, Not. of Gift to GLGM (Kahn and Lokietz transferring ARL's assets to GLGM).

[2] GLGM is ARL's successor, offering the same services for the same prices and using the same staff as ARL.  **Tab 3**, Declaration of Barbara Cantrell, Ex. B at 10-11.  Because these businesses are indistinguishable, they are denoted in this brief as "ARL/GLGM."

[3] *Id.*, Ex. A at 4.

[4] **Tab 6**, Declaration of Ken Colt, Ex. C (showing ARL/GLGM payments to Baxley totaling $6,000 and to Malatesta totaling $3,000).

[5] Bank records for the six-month period April through October 2003 for three of Kahn's accounts reveal customer deposits totaling $478,495.41.  *Id.* ¶ 9.  He has been selling abusive tax schemes since at least 1996.  **Tab 7**, Transcript of Meeting of Creditors ("Bankr. Tr.") at 13:8-13.

-1-

enter a preliminary injunction following the temporary restraining order.

## I.   FACTS

**A.   ARL/GLGM Sells Counterfeit Checks.**

ARL/GLGM produces counterfeits checks, called "registered bills of exchange," for customers to use to "pay" their taxes.[6]  Printed on real check stock with watermarks, colored backgrounds, micro-printing in the borders, and other security features, these checks appear genuine, but draw on imaginary "Treasury Direct Accounts" that Kahn claims the government maintains for each American.[7]  ARL/GLGM also sells counterfeit bonds, "registered bonds for discharge of debt," drawing on these same fictitious accounts.[8]  Customers can purchase the counterfeit bonds with the amount left blank to send to the IRS along with a blank IRS Form 2848, Power of Attorney and Declaration of Representative (POA form), asking the IRS to become the customer's POA, complete the customer's federal tax return, and write the amount of tax owed on the counterfeit bond for payment.[9]

---

[6] **Tab 6**, Colt Decl., Ex. A (showing customer checks for "Bill of Exchange" or "BOE" ranging from $25 to $150).

[7] **Tab 11**, Declaration of Marion L. Goyette, Ex. A at 6 (explaining that the bills of exchange use the customer's Social Security number as the account number). *See, e.g.,* **Sealed Tab 31**, Declaration James A. Rooney, Ex. B (original); **Sealed Tab 32**, Declaration of Cheryl J. Stiles, Ex. A (original); **Sealed Tab 33**, Declaration of J.R. Krogh, Ex. B (original); **Sealed Tab 34**, Certified IRS Records (one original and one copy); **Tab 13**, Declaration of Patricia Graham ¶ 5 (identifying the senders of these counterfeit checks as ARL/GLGM customers).

[8] *See, e.g.,* **Tab 8**, Declaration of Richard L. Hanauer, Ex. F.  The bonds purport to be negotiable through the Puerto Rican Treasury Department. *Id.* ("NEGOTIATE . . . THROUGH THE . . . DEPARTMENTO DE HACIENDA . . . PUERTO RICO").

[9] **Sealed Tab 35**, Declaration of Shauna Henline, ¶ 3, Ex. A (IRS has received approximately 500 blank POA packages); **Tab 13**, P. Graham Decl. ¶ 5 (identifying senders of

(continued...)

Kahn lies that ARL/GLGM's counterfeit checks "definitely are valid forms of payment."[10]  Any information to the contrary, he assures his customers, is the result of "ignorance or disinformation disseminated by the government," because he has never seen one of his bills of exchange rejected as invalid.[11]  "[I]n every case" that a customer used ARL/GLGM's counterfeit checks, Kahn falsely claims, "the IRS . . . stopped . . . collection efforts against" that customer; some customers "even got verification . . . that the IRS amended their tax account to reflect a zero balance."[12]  Were the IRS or a creditor to reject ARL/GLGM's bills of exchange, then, according to Kahn, the customer's debt would be automatically discharged.[13]

As a prerequisite for obtaining the counterfeit checks, customers must complete ARL/GLGM's UCC process, using a UCC-1 financing statement, a security agreement, and a letter to the United States Treasury to claim a security interest in themselves, their birth certificates, their names, and their property.[14]  The UCC process is based on two ludicrous

---

[9](...continued)
blank POA packages as ARL/GLGM customers); **Tab 3**, Cantrell Decl., Ex. B at 132 (Kahn falsely claims that the blank POA packages "eliminat[e] willful failure to file a tax return and tax evasion" penalties and charges).

[10] **Tab 11**, Goyette Decl., Ex. A at 43.

[11] *Id.*

[12] *Id.* at 5.

[13] *Id.* at 44.

[14] *Id.* at 5; **Tab 3**, Cantrell Decl., Ex. B at 241 ($300-$500 fee for the UCC process); **Tab 8**, Hanauer Decl., Ex. A (example of ARL/GLGM's UCC-1 Financing Statement and copy of ARL/GLGM instructions to customers regarding the UCC scam).

propositions that Kahn presents as gospel truth: the first is that the UCC governs everything,[15] and the second is that a person's name written in all capital letters is not the person's name.[16] Rather, it is the person's "strawman," a fictional entity that the person can "control" with ARL/GLGM's UCC process.[17] Once you control your "strawman," magical things happen. For one, the police will not give you traffic tickets.[18] But the main claimed benefit is that a customer can access an unlimited line of credit, the Treasury Direct Account. By purchasing ARL/GLGM's bills of exchange or bonds, a customer can supposedly draw on the Treasury Direct Account to pay any debt, including mortgages, criminal fines, judgments, and taxes.[19]

As preposterous as Kahn's "strawman" and "registered bill of exchange" story is, his customers buy it. The IRS is unable to determine how many ARL/GLGM counterfeit checks it has received so far because they are not always detected immediately, but eleven, totaling $2,237,485.55, are submitted with this motion.[20] Records of three of Kahn's bank accounts show

---

[15] **Tab 13**, P. Graham Decl., Ex. B at 14 (claiming that the IRS operates under the UCC); **Tab 19**, Declaration of Anne Norris Graham, Ex. C at 28 ("Uniform Commercial Code: The Law of the Land"). *See* **Tab 12**, Order, *United States v. Kahn* (rejecting Kahn's UCC-based defense to the United States' complaint as "incomprehensible and irrelevant.").

[16] **Tab 19**, A.N. Graham Decl., Ex. C at 7.

[17] *Id.* at 18-20.

[18] **Tab 11**, Goyette Decl., Ex. A at 44.

[19] *Id.* at 10, 44. *See, e.g.*, **Tab 9**, Declaration of Michael J. Kearns, Ex. A (check to pay judgment); **Tab 10**, Declaration of Kari M. Larson, Ex. C (check to pay civil contempt fine).

[20] **Tab 8**, Hanauer Decl., Exs. D, G (copies); **Tab 9**, Kearns Decl., Ex. A (copy); **Tab 10**, Larson Decl., Exs. A-C (copies); **Sealed Tab 31**, Rooney Decl., Ex. B (original); **Sealed Tab 32**, Stiles Decl., Ex. A (original); **Sealed Tab 33**, Krogh Decl., Ex. B (original); **Sealed Tab 34**, Certified IRS Records (one original and one copy). Kahn sent one of these checks himself to the
(continued...)

that he has sold counterfeit checks and bonds to an additional eight customers.[21]  While close examination of these checks reveals that they are counterfeit, IRS employees processing enormous volumes of checks do not have time to scrutinize each check and thus cannot always detect counterfeits immediately.  The IRS accepted an ARL/GLGM check from Kevin Mahoney for $171,910.81, and mistakenly credited his account.[22]  Nine days later, the check was returned and the credit reversed.[23]

ARL/GLGM checks pose immediate harm to the United States.  First, they could lead to the erroneous release of a federal tax lien.  By law, the IRS must release liens within thirty days of a tax liability being satisfied.[24]  As illustrated by Mahoney's check, the IRS credits the taxpayer's account upon receipt of a check; if thirty days elapse between an attempted deposit and the bank returning a fake check, a lien may be released, allowing ARL/GLGM's customer to sell property and deprive the IRS of a secured interest.  Even without a sale, the IRS may lose its

─────────────────────

[20](...continued)
Department of Justice to satisfy a judgment this court entered against him.  **Tab 9**, Kearns Decl., Ex. A; **Tab 12**, J. and Not. of Tendered Payment.  Another check, from Rex Black, whom the Northern District of Illinois permanently enjoined from promoting his own abusive tax schemes, was sent to that court's clerk to pay civil contempt fines.  **Tab 10**, Larson Decl., Ex. C; **Tab 13**, P. Graham Decl. ¶ 5 (listing Black as an ARL/GLGM customer).

[21] **Tab 6**, Colt Decl., Ex. A.

[22] **Sealed Tab 32**, Stiles Decl. ¶¶ 2-3, Ex. A.  An abusive tax scheme promoter in his own right, Mahoney was permanently enjoined on July 12, 2002, from promoting sham trusts designed to evade income tax.  **Tab 10**, Larson Decl. ¶ 3; **Tab 13**, P. Graham Decl. ¶ 5 (listing Mahoney as an ARL/GLGM customer).

[23] **Sealed Tab 32**, Stiles Decl. ¶¶ 4-5.

[24] 26 U.S.C. (Internal Revenue Code, I.R.C.) § 6325(a)(1).

lien priority.[25]  Second, an erroneous credit to a taxpayer's account may cause a refund.  Finally,

identifying fake checks and reversing erroneous refunds and credits wastes IRS resources.

**B.      ARL/GLGM Assists Customers in Hiding Assets and Income from the IRS in Corporations Sole.**

A "corporation sole" is an archaic business organization recognized by some states for

churches and other religious, tax-exempt entities.[26]  Kahn advertises that anyone can claim this

tax-exempt status simply by purchasing a corporation sole from ARL/GLGM.[27]  On his advice,

customers declare their families to be ministries and select an "overseer" ("usually . . . the man of

the house") to run the corporation sole.[28]  Kahn claims that the customer is "taking care of the

assets of God that he has given [him or her] to take care of while . . . on this earth."[29]  By Kahn's

logic, property transferred to the corporation sole "is being given away to a religious order so it

no longer belongs to the family, even though the family may be the religious order."[30]  This

distinction is meaningless because Kahn assures customers that they will retain complete control

over all assets in their corporation sole: "You can use that money in any way that you want

_____

[25] *See* I.R.C. § 6325(f)(2).

[26] *See, e.g.*, Nev. Rev. Stat. § 84.010 (allowing corporations sole "for acquiring, holding or disposing of church . . . property, for the benefit of religion, for works of charity, and for public worship . . . ."); Utah Code Ann. § 16-7-1 (same); Wash. Rev. Code § 24.12.010 (same).

[27] The cost of Kahn's corporations sole is "a minimum donation of $1,400 to get one in Utah [or] $1,300 in Nevada." **Tab 11**, Goyette Decl., Ex. A at 115. *See* **Tab 14**, Transcript from CD of Kahn Broadcast (Kahn Broadcast Tr.), at 56:8-10; **Tab 6**, Colt Decl., Ex. B (showing $1,300 checks to ARL/GLGM and Kahn for corporations sole).

[28] **Tab 14**, Kahn Broadcast Tr. at 42:14-43:2.

[29] *Id.* at 50:4-6.

[30] *Id.* at 51:14-16.

to. . . . [T]here's [sic] no restrictions on how the overseer uses the money."[31] This squares with

Kahn's tax evasion philosophy: "[l]earn to control things; don't own them."[32]

Once a customer transfers assets and income to a corporation sole, Kahn falsely advises,

the assets become collection-proof—"you can't touch the property of the Corporation

So[le]"[33]—and the income becomes tax-exempt, a feature Kahn says can be enhanced by taking a

vow of poverty.[34] To take full advantage of the corporation sole, Kahn recommends that it be

paired with a limited liability corporation (LLC) to give the family "ministry" a corporate "front"

for conducting business:

> All the money flows through [the LLC], not to it, and it goes to the
> shareholders. . . . [I]f the shareholders are the Corporation So[le], then the money
> is going through on a tax-free basis because a Corporation So[le] has no filing
> requirements with the [IRS]. It has no requirement to file taxes. So the money is
> flowing through there just on a tax-free basis, it works like a ministry.[35]

ARL/GLGM files corporations sole papers for customers with the Washington, Utah, or

Nevada Secretary of State.[36] Jimmy Fugate, who lives in Florida, purchased an ARL/GLGM

--------

[31] *Id.* at 66:1-4.

[32] **Tab 3**, Cantrell Decl., Ex. B at 240 ("Divest yourself of all assets and income sources. If you have nothing, there will be nothing for the IRS (or anyone else) to seize.").

[33] **Tab 14**, Kahn Broadcast Tr. at 45:19-46:11.

[34] **Tab 11**, Goyette Decl., Ex. A at 113-15 (disputing the IRS warning that "[c]laiming a vow of poverty or claiming fraudulent charitable contributions to church for money which is ultimately used to pay personal expenses is not legal" by falsely stating that the warning does not apply if the church is a corporation sole).

[35] **Tab 14**, Kahn Broadcast Tr. at 62:17-63:8.

[36] **Tab 11**, Goyette Decl., Ex. A at 115; **Tab 15**, Wash. Cert. Arts. Incorp.; **Tab 18**, Nev. Cert. Arts. Incorp. Michael Tarantino sets up ARL/GLGM's corporations sole in Nevada; Dale
(continued...)

corporation sole, Grace Covenant Ministries, registered in Washington.[37]  After failing to satisfy

his $137,318.57 federal tax liability with one of ARL/GLGM's counterfeit checks, Fugate

fraudulently transferred his residence to Grace Covenant Ministries.[38]

ARL/GLGM's corporation-sole promotion is part of a growing problem for the IRS.  The

IRS has eighteen investigations into corporation-sole promoters, a 50% increase from only five

months ago.[39]  The harm to the United States is twofold.  First, on the basis of Kahn's and other

promoters' misrepresentations that corporations sole are tax-exempt, purchasers either stop filing

federal tax returns altogether or fail to report all their taxable income.[40]  Second, by hiding assets

in a corporation sole, corporation sole-users make it difficult for the IRS to identify and seize

their assets, thus obstructing tax collection.[41]

**C.     ARL/GLGM Sends Frivolous Letters and TIGTA Complaints To Obstruct IRS
       Examinations and Collections.**

One of ARL/GLGM's chief services is obstructing IRS examination and collection

efforts.  After ARL/GLGM customers file a POA form authorizing Baxley or Malatesta to

---

[36](...continued)
Livingston does it in Utah.  *See* **Tab 6**, Colt Decl., Ex. C (ARL/GLGM payments to Tarantino totaling $10,145 and to Livingston totaling $9,000).  Kahn formed his own corporation sole, GLGM, in both Washington and Nevada.  **Tab 15**, Wash. Cert. Arts. of Incorp. for GLGM; **Tab 16**, Nev. Cert. Arts. of Incorp. for GLGM.

[37] **Tab 15**, Wash. Cert. Arts. of Incorp. for Grace Covenant Ministries.

[38] **Tab 8**, Hanauer Decl. ¶ 6-7.

[39] *Id.* ¶ 4.

[40] *Id.* ¶ 8.

[41] *Id.* ¶ 9.

represent them before the IRS,[42] ARL/GLGM begins a relentless campaign of sending frivolous letters (written by Baxley and Malatesta) to the IRS on the customers' behalf.[43]  ARL/GLGM also prepares frivolous letters for customers to sign and send to the IRS directly.[44]  ARL/GLGM sends frivolous Baxley and Malatesta letters to third parties, demanding that they refuse legitimate IRS requests for information regarding ARL/GLGM customers.[45]  Baxley or Malatesta appear, either in person or by telephone, to represent customers before the IRS, making the same frivolous arguments as in their letters.[46]

Baxley and Malatesta's letters on behalf of ARL/GLGM customers follow a pattern. First, ARL/GLGM sends letters challenging the IRS's authority to enforce the tax laws, refusing to cooperate, and threatening to file a complaint with the Treasury Inspector General for Tax

---

[42] As of May 2002, 1,932 ARL/GLGM POAs had been filed with the IRS.  **Tab 13**, P. Graham Decl. ¶ 4.  **Tab 3**, Cantrell Decl., Ex. B at 241 (cost for ARL/GLGM annual membership, which includes the POA, is $150 to $200).  In addition to its own customers, ARL/GLGM provides this service for customers of other abusive tax scheme promoters. *See* **Tab 20**, Declaration of David C. Lutz ¶ 9; **Tab 21**, Declaration of Joseph M. Olivetti ¶ 4. Formerly, the POAs were attorney Ray P. Pope and attorney/CPA Thomas R. Roberts, but by 2001 Baxley and Malatesta had replaced them, presumably because Pope was convicted of investment fraud and Roberts was (and still is) wanted by the FBI on an arrest warrant for bank fraud and money laundering.  **Tab 4**, Declaration of Eric K. Saunders ¶¶ 3-5.

[43] **Tab 3**, Cantrell Decl., Ex. B at 241 (charging $50 per letter). *See, e.g.,* **Tab 18**, Declaration of Bryan Morris, Exs. A-B; **Tab 22**, Declaration of Martin J. Splinter, Exs. A-AA.

[44] **Tab 8**, Hanauer Decl., Ex. F.

[45] **Tab 24**, Declaration of Rick D. Poole, Ex. E.

[46] *Id.*, Ex. B (IRS interview with ARL/GLGM customers David and Fern Miller, at which Baxley represented the Millers and directed them to answer all questions "Fifth Amendment.").

Administration (TIGTA) against an IRS employee.[47]  Often, frivolous Freedom of Information

Act and Privacy Act requests are included.[48]  Then, ARL/GLGM files a TIGTA complaint falsely

accusing an IRS employee of violating a customer's rights and of engaging in mail fraud.[49]

These letters and TIGTA complaints are all nearly identical, making the same frivolous

arguments, and bear little relation to the individual customer's situation.  Rather, ARL/GLGM

mass-produces these letters to bilk customers and to obstruct the IRS.[50]

Defendants intend these letters and complaints to intimidate.  At least one IRS employee

was "quite upset" by Baxley's complaints and another felt "threat[ened]."[51]  Beyond the

intimidation, Baxley and Malatesta's letters and complaints drain resources from an already

overburdened tax-administration system.  TIGTA has identified between 1,500 and 1,600

---

[47] **Tab 8**, Hanauer Decl., Ex. B; **Tab 18**, Morris Decl., Exs. A-E; **Tab 21**, Olivetti Decl. ¶¶ 7, 12, and 17; **Tab 24**, Poole Decl., Exs. A, C-D; **Tab 23**, Gay Decl., Exs. A-N; **Tab 25**, Declaration of Arthur L. Brunwasser, Ex. A-E; **Sealed Tab 31**, Rooney Decl., Ex. A; **Sealed Tab 33**, Krogh Decl., Ex. A.

[48] *See* **Tab 18**, Morris Decl., Ex. D; **Tab 21**, Olivetti Decl., Ex. G; **Tab 22**, Splinter Decl., Exs. O, Q, and X.

[49] **Tab 4**, Saunders Decl., Exs. D-I; **Tab 22**, Splinter Decl., Ex. AA; **Tab 25**, Brunwasser Decl., Ex. A.  Defendants intend their TIGTA complaints to waste TIGTA's time. **Tab 11**, Goyette Decl., Ex. A at 2 (explaining that TIGTA complaints "take[] a while . . . to investigate . . . [because] TIGTA doesn't have very many agents working for them.").

[50] These complaints and letters are all mailed from ARL/GLGM's office in Mt. Dora, Florida (previously in Mt. Plymouth, Florida), even though Baxley lives in Gainesville and Malatesta in Texas. *See, e.g.*, **Tab 18**, Morris Decl., Exs. A-B (letters from Malatesta and Baxley bearing ARL/GLGM's address).  *See* **Tab 4**, Saunders Decl. ¶ 6 (relating that former ARL POA Roberts admitted he did not actually sign the letters but permitted, for a fee, ARL's employees to stamp his signature); **Tab 8**, Hanauer Decl. Ex. F (letter ostensibly from Walter Dale Martin that asked the IRS to prepare a return for Rodney Justin, presumably another ARL/GLGM customer).

[51] **Tab 5**, Declaration of William B. Moran, Ex. A at 10-11.

-10-

ARL/GLGM-filed complaints between 1999 and 2003.[52]  TIGTA special agent Eric Saunders

spent nearly 1,500 hours processing and examining ARL/GLGM's meritless TIGTA

complaints.[53]  Due to Baxley and Malatesta's obstructionist tactics, five IRS employees have

spent an estimated 167.5 hours attempting to collect taxes from only ten ARL/GLGM

customers;[54] considering that 1,932 customers have Baxley and/or Malatesta as a POA,[55] the time

spent on ARL/GLGM's frivolous letters, complaints, and other filings could run into the tens of

thousands of hours.

**D.    Kahn Markets ARL/GLGM's Abusive Tax Schemes Nationwide.**

Kahn aggressively markets his tax scams coast to coast:  ARL/GLGM has customers

from Hawaii to Massachusetts.[56]  Together with his wife, Kookie Kahn,[57] Kahn promotes tax

scams through his "Eddie Kahn Tax Seminars," most recently held in Florida, Pennsylvania,

---

[52] **Tab 4**, Saunders Decl. ¶ 11.

[53] *Id.* at ¶ 11 (stating that the bulk of the 1,500 hours was spent reviewing complaints).

[54] **Tab 8**, Hanauer Decl. ¶¶ 11-12; **Tab 18**, Morris Decl. ¶ 10; **Tab 24**, Poole Decl. ¶ 11; **Tab 22**, Splinter Decl. ¶ 32.

[55] **Tab 13**, P. Graham Decl. ¶ 4.  Kahn testified in 2002 that ARL/GLGM had had 4,000 customers since 1996.  **Tab 7**, Bankr. Tr. at 13:8-13.

[56] *See* **Tab 6**, Colt Decl. Ex. A (customers in Santa Fe, New Mexico; Newnan, Georgia; Sparrow Bush, New York; Phoenix, Arizona; Monument, Colorado; Las Vegas, Nevada; Natchitoches, Louisiana; Hauula, Hawaii; Horshoe Bend, Arkansas; Houston, Texas; Kaweah, California; Cookeville, Tennessee; Greenwich, Connecticut; Sparta, Wisconsin; Gaithersburg, Maryland; Indianapolis, Indiana; Gig Harbor, Washington; McConnellsburg, Pennsylvania; Helena, Montana; Sebring, Florida; and Bellevue, Nebraska); **Tab 10**, Larson Decl. ¶ 3 (customer in Attleboro, Massachusetts); **Sealed Tab 35**, Henline Decl., Ex. A (customer in Detroit, Michigan).

[57] **Tab 13**, P. Graham Decl., Ex. A (e-mail from Kookie Kahn describing her role in the seminars); **Tab 3**, Cantrell Decl. Ex. A at 2 (referring seminar inquiries to Kookie Kahn).

Oregon, Virginia, and Colorado.[58]  He falsely advertises that seminar attendees will learn

"[w]hich taxes you must pay and which ones are voluntary," as well as "[p]roven techniques for

successfully dealing with the IRS."[59]  Attendees receive "over 400 documents [to] use in dealing

with bureaucrats" and can purchase Kahn's other "educational materials:" his manuals and

videotapes.[60]  The seminars are based on Kahn's "'how to'" manual, "No Enforcement

Statutes/IRS Regulations Applicable for Individual Income Tax," which is a step-by-step guide to

evading taxes and obstructing the IRS.[61]

Kahn also recruits customers through his websites, www.eddiekahn.com,

www.eddiekahnoverseer.org, www.glgm.org, and www.taxtruthnews.com.  At the latter,

customers can purchase Kahn's newsletter, the "Tax Truth Newsletter:  Exposing the Deceptive

Practices of the IRS," advertising ARL/GLGM's tax scams.[62]  Visitors to Kahn's websites learn

about ARL/GLGM's "IMF/BMF decoding" service.  Based on Kahn's assertion that the IRS has

erroneously classified Americans as being engaged in taxable activities, ARL/GLGM orders a

customer's Individual Master File (IMF) or Business Master File (BMF) from the IRS and

---

[58] **Tab 3**, Cantrell Decl., Ex. A at 1; Ex. B at 82.

[59] *Id.* at 4.  Admission fees are $35 or $45 per person.  *Id.*

[60] *Id.*

[61] *Id.* The manual, which is updated frequently with videotapes, and other "educational materials" are marketed through Eddie Kahn & Associates.  **Tab 13**, P. Graham Decl., Ex. B at 76 (providing scripts of frivolous arguments to present to IRS employees).

[62] The newsletter is Kahn's mouthpiece:  www.taxtruthnews.com prominently displays his photograph, the newsletter banner proclaims "FEATURING EDDIE KAHN," and every issue is devoted to Kahn and his schemes.  Though it has a disclaimer that it is "authored and published independently" from Kahn and ARL/GLGM, even if true, the author, in active concert with Kahn, would be subject to the TRO and preliminary injunction.  *See* Fed. R. Civ. P. 65(d).

"decodes" it, returning it to the IRS with "corrections" claiming that the customer is tax-exempt.[63] The www.eddiekahn.com website contains frivolous complaints, briefs, and other pleadings for customers to file in state court seeking to release federal tax liens;[64] Department of Justice attorneys have spent at least 2,855 hours on 74 such cases.[65] Kahn also dispenses fraudulent tax advice on these sites, telling customers that they are not liable for federal tax and that they need not file federal tax returns.[66]

## II.   ARGUMENT

### A.   Standards for Injunctive Relief

Because the United States is seeking a TRO after notice to defendants, this motion should be treated as a preliminary injunction motion.[67] Due to the urgent need to halt irreparable harm, "a preliminary injunction is customarily granted on . . . procedures that are less formal and on evidence that is less complete than a trial on the merits. A party thus is not required to prove his

---

[63] **Tab 19**, A.N. Graham Decl., Ex. B at 2 (IMF/BMF decoding service fees start at $200).

[64] **Tab 3**, Cantrell Decl., Ex. B at 207-31.

[65] **Tab 29**, Declaration of Bruce T. Russel ¶¶ 3-5 (identifying lien removal cases as identical to example on www.eddiekahn.com); **Tab 30**, Declaration of Marrise V. Harper ¶4 (showing that Department of Justice attorneys spent at least 2,855 hours on these cases).

[66] *Id.* at 148 ("Based on our research, no American is liable for Individual Income Tax.") and 76 ("'There is no law that requires anyone to file a 1040 form.'").

[67] *Walker v. O'Bannon*, 487 F. Supp. 1151, 1153 n.6 (W.D. Pa. 1980), *citing Dilworth v. Riner*, 343 F.2d 226 (5th Cir. 1965) and *Wright & Miller*, Federal Practice & Procedure: Civil § 2951. If the Court grants the TRO without holding a hearing, perhaps because one or more of the defendants cannot be timely served, then the Court must find that the nature of harm to the Government merits imposing an *ex parte* TRO for the shorter of 20 days (10 days plus a 10-day extension) or the earliest possible hearing date. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). Congress contemplated that courts might impose TROs when it passed I.R.C. § 7408. *See* S. Rept, PL 94-455, 10/4/76, p. 359.

case in full" at the preliminary injunction stage.[68]  In a statutory-injunction action such as this, the movant must demonstrate that the statute has been violated and that "there is a reasonable likelihood of future violations."[69]  Because 26 U.S.C. (Internal Revenue Code, I.R.C.) § 7408 sets forth the criteria for injunctive relief, the United States need only meet those criteria, without reference to the traditional equitable factors, for a court to issue a preliminary injunction under that section.[70]  For an injunction under § 7402(a), the Eleventh Circuit requires a showing that: (1) it is likely that the United States will suffer irreparable injury if defendants' conduct continues; (2) it is unlikely that defendants will be harmed by the injunction; (3) the United States is likely to prevail on the merits; and (4) an injunction will serve the public interest.[71]  The evidence submitted with this motion establishes that defendants should be enjoined under § 7408 from promoting their fraudulent tax schemes, and under § 7402(a) from interfering with the administration of the internal revenue laws.

---

[68] *University of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981).  *See Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986) ("Affidavits and other hearsay materials are often received in preliminary injunction proceedings.").

[69] *S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982).

[70] *See United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000) ("The traditional requirements for equitable relief need not be satisfied since Section 7408 expressly authorizes the issuance of an injunction.").

[71] *United States v. Ernst & Whinney*, 735 F.2d 1296, 1301 (11th Cir. 1984) ("the decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the . . . use of the equitable remedy."); *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (listing the equitable factors for a preliminary injunction).  *See* L.R. 4.05(b)(4) (setting forth the equitable considerations for issuance of a TRO).

**B.      Injunctive Relief Is Warranted under I.R.C. § 7408 Because Defendants' Promotions and Their Preparation of Frivolous Tax-Related Documents Violate Both I.R.C. §§ 6700 and 6701.**

Section 7408 authorizes a court to enjoin persons who have engaged in any conduct subject to penalty under §§ 6700 or 6701 if the court finds that injunctive relief is appropriate to prevent the recurrence of such conduct.  Under § 6700, any plan or arrangement "having some connection to taxes can serve as a 'tax shelter' and will be an 'abusive' tax shelter if the defendant makes the requisite false or fraudulent statements concerning the tax benefits of participation."[72]  To establish a violation of § 6700 warranting an injunction under § 7408, the United States must show that defendants:

> (1) . . . organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) they made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) they knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent recurrence of this conduct.[73]

Section 6701 is violated when a person prepares or assists in the preparation of "any portion of a return, affidavit, claim, or other document" that he "knows (or has reason to believe) will be used in connection with any material matter" under the I.R.C. and that he knows will "result in an understatement of the liability for tax."[74]  There is overwhelming evidence that defendants are violating both §§ 6700 and 6701, and that they will continue unless enjoined.

---

[72] *United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000).

[73] *Estate Pres. Servs.*, 202 F.3d at 1098 (citing §§ 6700(a), 7408(b)).  *See id.* at 1103 (listing three factors indicating whether the promoter "knew or had reason to know:"  the extent of his reliance on knowledgeable professionals, his level of sophistication and education, and his familiarity with tax matters).

[74] I.R.C. § 6701.

-15-

ARL/GLGM's manual, newsletters, and websites are replete with false claims: that Americans are not liable for federal income tax, that one can satisfy tax liabilities with ARL/GLGM's counterfeit checks, and that through use of corporations sole, customers can shield their assets and income from the IRS. Defendants' false and fraudulent statements strike at the very heart of the internal revenue laws: the obligation to pay tax.[75] Defendants have every reason to know that their schemes are fraudulent because their false claims are routinely rejected by the courts.[76] Kahn, a self-proclaimed tax expert,[77] has read IRS publications debunking his schemes, but rejects them as "disinformation."[78] Given his 1985 conviction for three counts of willful failure to file federal tax returns, Kahn is well aware that his claim that "[t]here is no law that requires anyone to file a 1040 form" is a lie.[79] Lokietz, Kookie Kahn, and the entire ARL/GLGM staff knew (much less had reason to know) that ARL/GLGM's claims were false

---

[75] *See Estate Pres. Servs.*, 38 F. Supp. 2d 846, 855 (E.D. Cal. 1998) (finding that statements pertaining to the "availability of tax deductions, credits, or to other mechanisms for reducing tax liability . . . clearly qualify as 'material'" under § 6700), *aff'd* 202 F.3d 1093.

[76] *See generally United States v. Basye*, 410 U.S. 441, 449-50 (1973) ("The entity earning the income—whether a partnership or an individual taxpayer—cannot avoid taxation by entering into a contractual arrangement whereby that income is diverted to some other person or entity."); *Raymond*, 228 F.3d at 812 (characterizing as "clearly false" "representations that payment of income tax is a voluntary activity"); *Biermann v. Commissioner*, 769 F.2d 707 (11th Cir. 1985) (rejecting tax protestor's arguments that he is not liable for tax as "patently frivolous" and "warrant[ing] no further discussion.").

[77] **Tab 3**, Cantrell Decl., Ex. A at 4.

[78] **Tab 11**, Goyette Decl., Ex. A at 43.

[79] **Tab 3**, Cantrell Decl., Ex. B at 76; **Tab 28**, Transcript of Trial at 78:19-20.

when two of their customers were convicted of tax evasion.[80]  Malatesta, as a CPA, and Baxley,

as an attorney, know or have reason to know the falsity of their positions; this point was driven

home for Baxley when two federal district courts sanctioned him for his tax-protester tactics and

an administrative law judge (ALJ) disbarred him from practice before the IRS.[81]  The ALJ found

that Baxley's "strained and flimsy arguments are not new and . . . have been uniformly rejected

by all federal courts that have addressed [them]."[82]

Defendants are violating § 6701 by preparing counterfeit checks, counterfeit bonds,

IMF/BMF "decodings," and other documents purporting to exempt customers from federal

taxation.  Defendants knew, and in fact intended, that these documents would be used in

connection with material tax matters.  Had the IRS accepted these documents, they would have

resulted in a gross understatement of tax liability:  the documents purport that the customer's

liability is satisfied or never existed at all.[83]

Defendants have been amply warned—by Kahn's and two customers' criminal

---

[80] **Tab 23**, Declaration of Anita J. Gay (discussing the prosecution and conviction of William Bernard Oertwig on six counts of tax evasion); **Tab 25**, Declaration of Arthur L. Brunwasser (discussing the conviction of Michael Charles O'Donnell on five counts of tax evasion, one count of failure to file federal tax returns, and one count of impeding the IRS); **Tab 13**, P. Graham Decl. ¶ 5 (listing Oertwig and O'Donnell as ARL/GLGM customers).

[81] **Tab 26**, *Nutt v. United States,* No. 1:96-CV-96-MMP, 1996 WL 741592 (N.D. Fla., Oct. 7, 1996); **Tab 27**, *United States v. Sweet*, No. 8:01-CV-331-T-23TGW, 2001 WL 1346666 (M.D. Fla. Sept. 17, 2001); **Tab 5**, Moran Decl., Ex. A.  If Baxley appeals the ALJ's decision, then the disbarment sanction would be stayed pending resolution of the appeal.

[82] **Tab 5**, Moran Decl., Ex. A at 8.  The ALJ described Baxley's letters as an attempt to "influence, that is, to stop, the official action of the IRS employee."  *Id.* at 17.

[83] At least one counterfeit check was initially accepted, leading to the temporary crediting of an ARL/GLGM customer's account.  **Sealed Tab 32**, Stiles Decl. ¶¶ 2-3, Ex. A.

-17-

convictions, by the sanctions entered against Baxley, and by the IRS disbarment of Baxley—that they are breaking the law, but they are undaunted.[84] Unless they are enjoined, they will continue to promote abusive tax schemes and draft documents understating their customers' tax liabilities.

**C.      Defendants Should Be Enjoined Under I.R.C. § 7402(a).**

Section 7402(a) manifests "a Congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws,"[85] and "has been used to enjoin interference with tax enforcement even when such interference does not violate any particular tax statute."[86] Here, injunctive relief under I.R.C. § 7402(a) is appropriate to prevent defendants' continued interference with tax enforcement because all four equitable criteria for an injunction are present: (1) the United States will suffer irreparable harm from defendants' schemes, (2) an injunction will not harm defendants, (3) the United States is likely to prevail on the merits, and (4) an injunction will serve the public interest.[87]

The United States will continue to suffer irreparable injury if defendants are not enjoined.

---

[84] **Tab 11**, Goyette Decl. Ex. B at 128 (newsletter dated after the IRS disbarred Baxley).

[85] *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957). *See United States v. First Nat'l City Bank*, 568 F.2d 853 (2d Cir. 1977).

[86] *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984). *See United States v. Kaun*, 633 F. Supp. 406, 409 (E.D. Wis. 1986) ("federal courts have routinely relied on [§ 7402(a)] . . . to preclude individuals . . . from disseminating their rather perverse notions about compliance with the Internal Revenue laws or from promoting certain tax avoidance schemes"), *aff'd*, 827 F.2d 1144 (7th Cir. 1987); *see generally United States v. Lee*, 455 U.S. 252, 253 (1982) (noting that "the broad public interest in maintaining a sound tax system is of . . . a high order."). *See generally United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) (finding in a case brought under I.R.C. § 7402 that "[t]he United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions.").

[87] *See American Red Cross*, 143 F.3d at 1410.

They intentionally waste Government resources with their frivolous letters, meritless TIGTA complaints, and counterfeit checks and bonds. Their blank POA scheme wasted an estimated 260 hours of IRS employees' time.[88] One TIGTA special agent wasted approximately 1,500 hours on ARL/GLGM's TIGTA complaints.[89] Another five IRS employees have wasted 167.5 hours attempting to collect taxes from only ten ARL/GLGM customers; considering that the IRS has received 1,932 ARL/GLGM POAs, the harm is immense.[90] The Department of Justice has wasted 2,855 hours on ARL/GLGM's frivolous lien removal suits.[91] Because they could lead to the release of federal tax liens or trigger erroneous refunds, ARL/GLGM's counterfeit checks directly harm the United States Treasury. Defendants obstruct IRS collections by advising customers not to cooperate and by helping customers hide their assets in sham corporations.

While the United States will suffer irreparable harm if defendants are not immediately enjoined, defendants would not be harmed by being compelled to obey the law.[92] Because they are violating I.R.C. §§ 6700 and 6701 and impeding the administration of the internal revenue laws, the United States has a strong likelihood of prevailing on the merits. Finally, the public interest is served by shutting down an illegal scheme promoting tax evasion.[93] The United States

---

[88] **Sealed Tab 35**, Henline Decl. ¶¶ 6, 8.

[89] **Tab 4**, Saunders Decl. ¶ 11.

[90] *See supra* at n.54-55.

[91] *See supra* at n.65.

[92] *See Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975) (finding that injunctions requiring people to follow the law do not cause hardship).

[93] *United States v. Lee*, 455 U.S. 252, 253 (1982) (noting that "the broad public interest in
(continued...)

is not the only victim here:  ARL/GLGM has taken millions of dollars from its customers while

harming them with fraudulent tax advice.[94]

### III.   CONCLUSION

The Court should enter a TRO followed by a preliminary injunction to prevent further

harm while this case is litigated.

Respectfully submitted,

PAUL I. PEREZ
United States Attorney

ANNE NORRIS GRAHAM
EVAN J. DAVIS
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Tel.: (202) 353-4384
            514-0079
Fax:  (202) 514-6770

_____

[93](...continued)
maintaining a sound tax system is of . . . a high order.").

[94] **Tab 6**, Colt Decl. ¶ 9; **Tab 23**, Gay Decl.; **Tab 25**, Brunwasser Decl.

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing  United States' Brief in Support

of Motion for Temporary Restraining Order and Preliminary Injunction has been made upon the

following by depositing a copy in the United States mail, postage prepaid, and by FedEx this 8th

day of December, 2003.

Eddie Ray Kahn
32504 Wekiva Pines Boulevard
Sorrento, FL  32776-9387

Milton Hargraves Baxley, II
1929 NW 12th Terrace
Gainesville, FL  32609-3420

Bryan Malatesta
2721 North Hill Terrace
Cleburne, TX  76031-7856

Kathleen Kahn
32504 Wekiva Pines Boulevard
Sorrento, FL  32776-9387

David Stephen Lokietz
176 North Lake Franklin Drive
Mount Dora, FL  32757-5938

David Stephen Lokietz as Executive
Trustee for
American Rights Litigators
440 North Donnelly Street
Mount Dora, FL  32757-5527

Eddie Kahn as Overseer for
Guiding Light of God Ministries
440 North Donnelly Street
Mount Dora, FL  32757-5527

Amie M. Bennett as Registered
Agent for
Eddie Kahn & Associates
440 North Donnelly Street
Mount Dora, FL  32757-5527


ANNE NORRIS GRAHAM
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 353-4384